### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ARLENE C. MOORE | : |
| | : |
| | : |
| v. | : Civil No. CCB-11-553 |
| | : |
| | : |
| MARYLAND DEPARTMENT OF PUBLIC | : |
| SAFETY & CORRECTIONAL SERVICES, | : |
| PATUXENT INSTITUTION | : |

### MEMORANDUM

Arlene Moore has sued the Maryland Department of Public Safety & Correctional Services, Patuxent Institution ("the State") for violation of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. Now pending before the court is the State's motion to dismiss. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the defendant's motion will be denied.

### BACKGROUND

Ms. Moore began working as a correctional officer at the Patuxent Institution, a correctional facility located in Jessup, Maryland, in July 1993. Ms. Moore worked at the facility for seventeen years and consistently received satisfactory job performance evaluations throughout her employment. In October 2009, Ms. Moore was diagnosed with Stage III breast cancer. On November 15, 2009, Ms. Moore was granted a medical leave to receive treatment for cancer, which included a mastectomy and radiation. By December 2009, Ms. Moore had

1

exhausted all of her paid medical leave. She therefore applied for, and received, unpaid leave under the Family Medical Leave Act. Ms. Moore also received donated leave from coworkers at the Maryland Department of Corrections, which allowed her receive paid leave through June 29, 2010.

At some unspecified date, the director of the Patuxent Institution's Human Resources Department, Electra Davis, urged Ms. Moore to apply for medical disability retirement. Ms. Moore rejected the suggestion and informed Ms. Davis that she intended to return to work upon the completion of her treatment. On August 4, 2010, Ms. Davis informed Ms. Moore that she would be placed on unpaid medical leave. Ms. Moore also alleges that Ms. Davis began prohibiting other employees from donating leave to Ms. Moore.

On August 5, 2010, Ms. Moore received clearance from her doctor to return to work. She notified Patuxent Institution that day that she intended to return to work as early as August 13, 2010. On August 9, 2010, Ms. Moore was informed by Patuxent Institution's Human Resources Department that she had been terminated, effective August 4, 2010.[1] Ms. Moore alleges that the Human Resources Department informed her that she would have to re-apply for a position through the Maryland Department of Corrections' Central Hiring Office. Ms. Moore immediately re-applied for a position, and was able to receive unemployment benefits in the meantime. In December 2010, the Maryland Department of Corrections offered Ms. Moore a correctional officer position at a different correctional facility, also located in Jessup, Maryland.

Ms. Moore filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging a violation of the ADA due to her alleged termination. The

---

[1] The defendant alleges that Ms. Moore was not terminated from her position, but was instead placed on a medical leave of absence without pay. (*See* Def.'s Mot. to Dismiss at 3 n.2.)

EEOC issued a Right to Sue letter on February 15, 2011. (Compl. ¶ 2.) On March 1, 2011, Ms. Moore filed suit against the Maryland Department of Public Safety & Correctional Services, Patuxent Institution seeking reinstatement to her position as a correctional officer II at the Patuxent Institution, compensatory damages, attorney's fees and costs, and declaratory and injunctive relief. On June 3, 2011, the State filed a motion to dismiss. The plaintiff has opposed the motion.

## **STANDARD OF REVIEW**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth

sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

As an initial matter, the State argues that Ms. Moore's ADA claim (Count I) is barred by Eleventh Amendment sovereign immunity. Ms. Moore concedes that the State is entitled to sovereign immunity with respect to her ADA claim (*see* Pl.'s Opp'n at 1), and the claim will therefore be dismissed. The State is not entitled to sovereign immunity with respect to Ms. Moore's Rehabilitation Act claim (Count II), however. *See* 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . ."). The State therefore moves to dismiss the claim for failure to state a claim.

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the

operation of the business of such covered entity."[2] 42 U.S.C. § 12112(b)(5)(A). To state a claim of discrimination under the Rehabilitation Act, a plaintiff must show: (1) "[h]e or she suffers a disability as defined by the statute"; (2) "[w]ith or without reasonable modifications, he or she is otherwise qualified to participate in the benefit or employment in question"; and (3) "[h]e or she was excluded from that benefit or employment because of the disability suffered." *McDavid v. Arthur*, 437 F. Supp. 2d 425, 428 (D. Md. 2006) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995)).

      The State argues that the plaintiff has failed to state facts sufficient to show that she was "otherwise qualified" to carry out the job of a correctional officer. To establish that she is "otherwise qualified" to perform a job, a plaintiff must show that she can (1) "perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue," and (2) if not, that "any reasonable accommodation by the employer would enable [her] to perform those functions." *Tyndall v. Nat'l Educ. Ctrs., Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994) (alteration in original) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993)). The plaintiff "bears the burden on demonstrating that she could perform the essential functions of her job with reasonable accommodation." *Id.* (citing *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990)). The State argues that Ms. Moore was unable to perform the essential functions of the job of a correctional officer because she was unable to be present at work and that an indefinite medical leave is, as a matter of law, an unreasonable accommodation. (Def.'s Mot. to Dismiss at 8-9.)

      There is no dispute that Ms. Moore was unable to perform the essential functions of her

---

[2] Although this language is drawn from the ADA, the same legal analysis applies to claims brought under the ADA and the Rehabilitation Act. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).

job during the period which she was on leave to receive medical treatment.[3] She was unable to be present at her job and was therefore unable to perform the duties of a correctional officer. The dispute between the parties surrounds the question of whether Ms. Moore's medical leave to receive treatment for cancer was a "reasonable accommodation" under the ADA and Rehabilitation Act. The Fourth Circuit has held that the meaning of "reasonable accommodation" does not require an employer to grant an employee an indefinite leave of absence to receive medical treatment for a prolonged illness or disability, especially because of the uncertainty of success. *See Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). A temporary leave of absence may, in some circumstances, be a reasonable accommodation under the ADA, however. *See* 29 C.F.R. § app. 1630.2(o) (2011) ("[O]ther accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment . . ."); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001) ("We have held that where a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA.") (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999)); *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 595 (S.D. W. Va. 2008) (explaining that medical leave may constitute a reasonable accommodation "where it is finite and will be reasonably likely to enable the employee to return to work") (internal quotation marks omitted); *McNamara v. Torneau, Inc.*, 496 F. Supp. 2d 366, 377 (S.D.N.Y. 2007)

---

[3] The State devotes much of its reply brief to the argument that regular attendance is an essential job function and that the plaintiff could not satisfy this requirement because she was on medical leave. The plaintiff, however, does not dispute this fact. She instead argues that the State failed to provide her with a reasonable accommodation that would have allowed her to satisfy the essential job function of regular attendance—i.e., if the State had granted her more time for medical leave, she would have been able to recover from her cancer so that she could return to her job full-time.

(acknowledging that a temporary leave of absence can constitute a reasonable accommodation in certain circumstances).

Whether Ms. Moore's eight-month absence from her job to receive cancer treatment was a reasonable accommodation under the ADA, or amounted to an "indefinite leave of absence" that imposed an undue hardship on the State, is a factual question that cannot be answered at this stage. *See Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998) (finding a genuine issue of fact existed on summary judgment as to whether granting further medical leave would have constituted a reasonable accommodation where there was evidence that the employer routinely granted extended medical leaves to employees) Ms. Moore has stated facts sufficient to support a finding that she was "otherwise qualified" for her job as a correctional officer. Although she concedes that she was unable to work while she was receiving treatment, she alleges that a reasonable accommodation of a medical leave would have enabled her to return to her job. Indeed, Ms. Moore was cleared to return to work just one day after she was allegedly terminated by the State. The State's motion to dismiss will therefore be denied.

September 12, 2011                                            /s/
Date                                                      Catherine C. Blake
                                                              United States District Judge