IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ARLENE MOORE | : |
| | : |
| | : |
| v. | : Civil No. CCB-11-0553 |
| | : |
| | : |
| MARYLAND DEPARTMENT | : |
| OF PUBLIC SAFETY AND | |
| CORRECTIONAL SERVICES | : |
| PATUXENT INSTITUTION | : |

## MEMORANDUM

Now pending before the court is a motion for summary judgment filed by the Maryland Department of Public Safety and Correctional Services Patuxent Institution (the "State") against plaintiff Arlene Moore ("Ms. Moore"). Ms. Moore alleges that the State violated the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. § 794, when it placed her on medical leave without pay after she had been absent from work for eight months to undergo cancer treatment. The issues in this case have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the State's motion for summary judgment will be granted.

## BACKGROUND

Arlene Moore began working as a Correctional Officer at Patuxent Institution, a correctional facility in Jessup, Maryland, in July 1993. (Compl., ECF No. 1, ¶ 8.) In October 2009, Ms. Moore was diagnosed with Stage III breast cancer. (*Id.* at ¶ 10.) Ms. Moore was granted a medical leave to undergo treatment, including a mastectomy and radiation, on November 15, 2009. (*Id.* at ¶ 11.) By December 2009, Ms. Moore had used all of her paid sick, annual, and personal leave, so she began using leave donated by other Department of Corrections

1

employees, which allowed her to continue receiving a paycheck. (*Id.* at ¶ 13, 15; Moore Depo., ECF No. 32, Ex. 1, at 44-45.)

Ms. Moore applied twice for leave under the Family and Medical Leave Act: in November 2009 and in March 2010. (Davis Depo., ECF No. 32, Ex. 2, at 49, 11.) In her initial request for leave, Ms. Moore indicated that she anticipated being able to return to work on January 12, 2010. (ECF No. 32, Ex. 3.) Her physician also estimated that she would be incapacitated for four to six weeks. (Def.'s Reply, ECF No. 36, Ex. D, at 2.) By March, however, Ms. Moore still had not recovered enough to resume her duties at Patuxent. She therefore applied for a second round of FMLA leave. (ECF No. 32, Ex. 2, at 11.) As part of her application, Ms. Moore submitted a form signed by her physician estimating that she would be incapacitated until October 2010. (Pl.'s Opp., ECF No. 33, Ex. 1.)

On June 30, 2010, Ms. Moore's FMLA leave expired. (ECF No. 32, Ex. 2, at 49-50.) Around this time, the director of the Patuxent Institution's Human Resources Department, Electra Davis, began suggesting to Ms. Moore that she apply for medical disability retirement. (*Id.* at ¶ 17; ECF No. 36, Ex. A, at 30.) Ms. Moore responded that she was not interested and intended to return to work upon completion of her treatment. (*Id.* at ¶ 18-19; ECF No. 36, Ex. A, at 31.) Ms. Moore could not provide a date as to when she would be able to return to work. (ECF No. 36, Ex. A, at 36.)

On August 4, 2010, Ms. Davis contacted Ms. Moore by telephone. (ECF No. 36, Ex. A, at 31.) Ms. Davis again asked whether Ms. Moore intended to apply for medical retirement, but Ms. Moore declined. (ECF No. 36, Ex. A, at 31.) Ms. Moore did not mention a date when she would be able to return to work, nor did she mention that she had an appointment with her doctor later that week at which she might be cleared for work. (ECF No. 36, Ex. A, at 38-39, 58.) Ms.

2

Davis advised Ms. Moore that she was being placed on medical leave without pay effective August 4, 2010. (ECF No. 1, ¶ 20; ECF No. 36, Ex. A, at 37.)[1]

On or around August 7, 2010 Ms. Moore's physician cleared her to return to work. (ECF No. 36, Ex. A, at 32-33.) On August 18, 2010, Ms. Moore submitted two documents to her employer signed by her physicians indicating that she could perform the duties of a correctional officer with no restrictions. (ECF No. 36, Ex. A, at 60-62; ECF No. 32, Ex. 5.).  According to Ms. Davis, because Ms. Moore had been separated from the payroll by this time, however, she could not return to her position without going through the reinstatement process. (ECF No. 32, Ex. 2, at 39-40.) On or around August 27, 2010, Ms. Moore received instructions on how to be reinstated. (ECF No. 32, Ex. 1, at 62 & Ex. 6.)

Ms. Moore reapplied for a correctional officer position through the Maryland Department of Corrections Central Hiring office. (ECF No. 1, ¶ 26.) As part of the reinstatement process, Ms. Moore was required to be fingerprinted and undergo a background check, psychological evaluation, and at least one interview. (ECF No. 32, Ex. 1, at 69.) While Ms. Moore was on medical leave without pay, she applied for and began receiving unemployment benefits. (ECF No. 1, ¶ 27; ECF No. 33, Ex. 5.)[2]

In December 2010, the Department of Corrections offered Ms. Moore a correctional officer position at the same pay and grade as her prior position, but at a different facility, also located in Jessup, Maryland. (ECF No. 1, ¶ 28; ECF No. 36, Ex. A, at 71-72.) Ms. Moore accepted the position and began work on January 3, 2011. (ECF No. 1, ¶ 29; ECF No. 36, Ex. A, at 71.)

---

[1] During or around the time of her August 4th conversation with Ms. Davis, Ms. Moore did not request any additional leave. (ECF No. 36, Ex. A, at 86.)
[2] The Maryland Department of Labor determined that Ms. Moore had been "discharged by Patuxent . . . while on leave."(ECF No. 33, Ex. 5.)

At some point after she was placed on medical leave without pay and separated from the payroll, Ms. Moore filed a timely complaint with the Equal Employment Opportunity Commission (EEOC), alleging that she had been terminated in violation of the ADA. (ECF No. 1, ¶ 1.) The EEOC issued a Right to Sue letter on February 15, 2011. (*Id.* at ¶ 2.)

On March 1, 2011, Ms. Moore filed suit in this court against the Maryland Department of Public Safety and Correctional Services Patuxent Institution, alleging violations of the ADA and the Rehabilitation Act of 1973. On June 3, 2011, the State filed a motion to dismiss, which this court granted in part and denied in part. The court concluded the State was entitled to sovereign immunity with respect to Ms. Moore's ADA claim, but whether Ms. Moore's request for additional leave beyond her eight-month absence from work to receive cancer treatment was a reasonable accommodation under the Rehabilitation Act was a factual question that could not be answered at that stage. As a result, the parties commenced discovery. On August 23, 2012, the State filed this motion for summary judgment.

## ANALYSIS

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

4

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

*Discussion*

Section 504 of Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[3] 42 U.S.C. § 12112(b)(5)(A).

To establish a violation of the Rehabilitation Act, a plaintiff must show: (1) "[h]e or she suffers a disability as defined by the statute"; (2) "[w]ith or without reasonable modifications, he

---

[3] Although this language is drawn from the ADA, the same legal analysis applies to claims brought under the Rehabilitation Act. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).

or she is otherwise qualified to participate in the benefit or employment in question"; and (3) "[h]e or she was excluded from that benefit or employment because of the disability suffered." *McDavid v. Arthur*, 437 F. Supp. 2d 425, 428 (D. Md. 2006) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995)). Only individuals who are "qualified" for the job in question may state a claim for discrimination. *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 212 (4th Cir. 1994). To determine whether an individual is "qualified," the court must decide "(1) whether she could 'perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue,' and (2) if not, whether 'any reasonable accommodation by the employer would enable [her] to perform those functions.'" 31 F.3d at 213 (internal citations omitted). The "[p]laintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation." *Id.*

Turning to the present case, there is no dispute that Ms. Moore was unable to perform the essential functions of her job while she was on leave to receive medical treatment. She was unable to be present at work and therefore could not perform the duties of a correctional officer. *See Tyndall*, 31 F.3d at 213 ("Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee 'who does not come to work cannot perform *any* of his job functions, essential or otherwise.'") Accordingly, to determine whether Ms. Moore was "qualified" for the correctional officer position, the court must decide whether any reasonable accommodation by the State would have enabled her to perform those functions.

A temporary leave of absence may, in some circumstances, be a reasonable accommodation under the ADA. *See* 29 C.F.R. app. § 1630.2(o) (2011) ("[O]ther accommodations could include permitting the use of accrued paid leave or providing additional

unpaid leave for necessary treatment . . . ."); *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001) ("We have held that where a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA."). The Fourth Circuit has held, however, that the duty of reasonable accommodation does not require an employer to grant a disabled employee an indefinite leave of absence to treat the disabling condition. *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). Additional medical leave is a reasonable accommodation only where it is "finite and will be reasonably likely to enable the employee to return to work." *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 596 (S.D. W. Va. 2008) (internal citations and quotation marks omitted). The plaintiff has the burden of persuasion with respect to demonstrating that an accommodation is reasonable. *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 509 (E.D. Va. 2007) *aff'd*, 250 F. App'x 552 (4th Cir. 2007).

    Ms. Moore has not met that burden. By the time the State placed Ms. Moore on medical leave without pay, it had already granted her eight months of leave, despite state regulations requiring automatic separation from the payroll when an employee is on a leave of absence for six months or more. *See* COMAR 17.04.11.24.A (providing that an employee who cannot provide "medical documentation" indicating that she "can return to [her] full range of duties within 6 months" is to be "separated from the payroll" while on leave without pay). Ms. Moore had used up all of her paid leave, two 12-week periods of FMLA leave, and leave donated from other state employees. In the months leading up to her placement on medical leave without pay, Ms. Moore had failed to provide Patuxent with a date on which she would be able to resume her duties. When Ms. Davis spoke to Ms. Moore on August 4th, Ms. Moore still could not provide

such a date.  Ms. Moore was therefore unable to provide a "finite" period of leave reasonably likely to enable her to return to work at the time she was placed on medical leave without pay. *See Kitchen*, 552 F. Supp. 2d at 596.

Ms. Moore claims that her leave of absence was not indefinite because her physician indicated in the FMLA form she submitted in March that Ms. Moore would be incapacitated until October.  Ms. Moore emphasizes that Ms. Davis did not complain that an October 2010 return date was too long or would cause Patuxent undue hardship. Nevertheless, Ms. Moore never told Ms. Davis that she would, or might, be able to return to work in October. On the contrary, after Ms. Moore submitted the FMLA form, she repeatedly told Ms. Davis that she did not know when she would be able to return to work.

As the Fourth Circuit has observed, a reasonable accommodation "is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d at 283; *see also Kitchen*, 552 F. Supp. 2d at 594. A plaintiff cannot prevail by demonstrating that she might be able to perform such functions at some uncertain time in the future. In *Kitchen v. Summers Continuous Care Center*, the plaintiff applied for and was granted a twelve-week leave under the FMLA after she lost her left arm in an automobile accident. 552 F. Supp. 2d at 591. Shortly before her FMLA leave was exhausted, she submitted a request for an additional, non-FMLA leave of absence of 90 days, accompanied by a letter from her doctor. *Id.* The court held the plaintiff's request for additional medical leave was not a reasonable accommodation. *Id.* at 596. In the court's view, the plaintiff had failed to produce sufficient evidence that extending her medical leave "was reasonably likely or foreseeable to allow her to perform her essential job

functions." *Id.* The court noted that the plaintiff's doctor's note did little more than request the maximum duration of discretionary leave under the employer's policy. *Id.* at 596-97.

Here, like the plaintiff in *Kitchen*, Ms. Moore claims that she was entitled to additional medical leave beyond the eight months she had already received. Ms. Moore has not, however, demonstrated that extending her leave of absence would have enabled her to perform the essential functions of her job in the immediate future. While it is true that Ms. Moore's doctors cleared her to return to work just days after she was placed on medical leave without pay, Ms. Moore failed even to mention her upcoming doctor's appointment and the possibility that she might be cleared for work during her August 4th conversation with Ms. Davis. In addition, Ms. Moore did not submit documentation from her physician indicating that she could perform the essential functions of her job until August 18th. Thus, Ms. Moore has not shown that, at the time she was placed on medical leave without pay, extending her leave would have allowed her to return to work and thereby perform the essential functions of her job in the immediate future. The court therefore agrees with the state that granting Ms. Moore a leave of absence beyond the eight months already afforded to her would not have constituted a reasonable accommodation.

Finally, Ms. Moore claims that Ms. Davis did not engage her in an interactive process to determine a reasonable accommodation before placing her on medical leave without pay. "An employee cannot base a [reasonable accommodation] claim solely on the allegation that the employer failed to engage in an interactive process." *Wells*, 483 F. Supp. 2d at 511 (internal quotation marks and citation omitted). Rather, "the employee must demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the qualified employee." *Id.* (citing *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000)). Because Ms. Moore's request for additional leave beyond

the eight months she had already received did not constitute a reasonable accommodation, whether Patuxent failed to engage in the interactive process is irrelevant.

In sum, Ms. Moore has failed to provide evidence for a reasonable juror to find that additional medical leave was a reasonable accommodation that would have allowed her to perform her essential job functions. Indeed, it appears the State granted Ms. Moore a very substantial amount of time on indefinite leave, and when she was able to return, worked with her to place her at a new location without a reduction in grade or pay. Accordingly, the State's motion for summary judgment will be granted.

A separate Order follows.


<u>February 13, 2013</u>        _____/s/_____
Date        Catherine C. Blake
       United States District Judge